## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MIKE MEYERS and MARY      :
DONOHUE,                    :     1:19-cv-596
                            :
       Plaintiffs,          :     Hon. John E. Jones III
                            :
    v.                     :
                            :
CALIBER HOME LOANS, SETERUS,   :
INC., LSF9 MASTER PARTICIPATION  :
TRUST, BANK OF AMERICA, N.A.    :
SUCCESSOR BY MERGER TO BAC    :
HOME LOANS SERVICING, LP,      :
FEDERAL NATIONAL MORTGAGE    :
ASSOCIATION, AND            :
PHELAN HALLINAN DIAMOND and   :
JONES, PLLC,                 :
                            :
       Defendants.         :

## MEMORANDUM
**September 13, 2019**

Presently pending before this Court is Defendants' Motion to Dismiss Plaintiffs' Complaint, (Doc. 12), filed by Defendants Caliber Home Loans ("Caliber") and LSF9 Master Participation Trust ("LSF9"). For the reasons that follow, we grant the motion in full.

## I.     FACTUAL BACKGROUND

Though there are scant facts pled therein, we take the following from Plaintiffs' Complaint and assume it to be true, as we must.

Where Plaintiffs' Complaint is lacking, we take from the public record, as we are permitted to do.[1]

Plaintiffs bring the instant claim before this Court for actual, emotional, and putative damages based upon a Pennsylvania state foreclosure judgment on their home. Plaintiffs cite perceived defects in the state court foreclosure action to support their various claims, arguing that Defendants engaged in misrepresentations that led to the allegedly unlawful foreclosure and that Defendants charged unlawful fees in servicing their mortgage.

On September 30, 2005, Plaintiffs executed and delivered a Mortgage Agreement to Mortgage Electronic Registration Systems, Inc. ("MERS") against their home located at 5993 Anderson Road, Stewartstown, PA 17363 ("the Mortgage") to secure a Note executed and delivered on March 11, 2004 ("the Note"). (Doc. 1 at 1, 3). The principal balance of the Mortgage was $225,000.00.[2] The Mortgage was properly assigned to BAC Home Loans servicing, L.P. ("BAC") on August 25, 2010. *Id.* BAC was succeeded in merger by Bank of America, N.A. *Id.*

---

[1]      *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint [and] matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case").

[2]      Complaint, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Feb. 6, 2015).

On March 1, 2010, Plaintiffs defaulted on the Mortgage. *Id*. Bank of America initiated a Complaint in Mortgage Foreclosure in the York County Court of Common Pleas on February 6, 2015.[3] *Id*. On February 11, 2016, the York County Court of Common Pleas entered a default judgment against Plaintiffs in the amount of $331,211.33.[4] Since that time, Plaintiffs have attempted to open the default judgment,[5] filed several Emergency Stay Petitions on the Sheriff's Sale of the Property,[6] and appealed those decisions to the Pennsylvania Superior Court,[7] all to no avail. The Sheriff's Sale on the Property has been continued several times.[8]

---

[3]     We note that the York County Court of Common Pleas civil docket displays two foreclosure actions against Plaintiffs for what appears to be the same Property. One was initiated in 2010 and one in 2015. The 2015 foreclosure action resulted in a default judgment in favor of the mortgage-servicer, Plaintiff in state court (the Defendants in the instant case). The 2010 case was eventually dismissed, it seems, due to a lack of activity on the docket for two years. Therefore, we will focus on the 2015 case, as it resulted in the judgment that serves as the basis for Plaintiffs' claims and Defendants' defenses in the instant case.

[4]     Judgment by Default, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Feb. 11, 2016).

[5]     Petition to Open Judgment, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. April 14, 2016).

[6]     Emergency Petition, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Aug. 10, 2017; Feb. 1, 2018).

[7]     Notice of Appeal to Superior Court, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Oct. 20, 2017).

[8]     Notice of Date of Continued Sheriff's Sale, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. May 25, 2017; Feb. 20, 2018; April 16, 2018; Dec. 6, 2018; Feb. 7, 2019).

On October 1, 2016, Defendant Caliber became the servicer of the Mortgage. (Doc. 1 at 5). Defendant LSF9 became the creditor at this time. *Id*. On April 8, 2017, Caliber sent Plaintiffs a Loss Mitigation Application, which Plaintiffs completed and returned to Caliber. *Id*. However, Caliber claimed they were not required to review the application and no action was taken. *Id*. Plaintiffs unsuccessfully attempted to modify their loan on November 12, 2018. *Id*. On April 8, 2019, Plaintiffs filed a Notice of Bankruptcy with the Sheriff's Office and the Sheriff's Sale was canceled.[9] Plaintiffs filed a Complaint in our Court, reiterating the above facts and proceedings, on April 5, 2019. (Doc. 1).

## II.   PROCEDURAL HISTORY

In their Complaint, Plaintiffs allege violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. § 1692, *et seq.*, (Count I); breach of contract, (Count II); *respondeat superior*, (Count III); unjust enrichment, (Count IV); violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 USC § § 1961-1968, (Count V); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S.A. § 201 *et seq.*, (Count VI); violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, (Count VII); and violation of 12 C.F.R. §

---

[9]      Sheriff's Return of Service, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Apr. 24, 2019).

1024.41, (Count VIII). Plaintiffs seek actual, emotional, and putative damages based upon the allegedly unlawful state foreclosure action and the allegedly impermissible actions on the part of Defendants that led to that foreclosure.

Defendants Caliber and LSF9 filed the instant Motion to Dismiss on July 9, 2019. (Doc. 12). The Motion has been fully briefed, (Docs. 13, 14, 19), and is ripe for disposition.

## III.   STANDARD OF REVIEW

Defendants raise three separate arguments as to why we should dismiss Plaintiffs' claims in their entirety. Under the *Rooker-Feldman* doctrine, Defendants argue that the state foreclosure judgment bars federal courts from hearing claims already decided by the state court. Second, Defendants argue that, even if *Rooker-Feldman* does not apply, *res judicata* precludes disposition by this Court because the state foreclosure judgment satisfies the elements of *res judicata* in Pennsylvania. Finally, Defendants argue that Plaintiffs' have failed to state a cognizable claim under the *Iqbal* and *Twombly* standards that would permit us to grant relief.

We first note that, while Defendants raise their arguments under F.R.C.P. 12(b)(6), their *Rooker-Feldman* doctrine argument is more properly brought under F.R.C.P. 12(b)(1). *Singleton v. Jas Automotive LLC*, 378 F.Supp.3d 334, 344 (E.D. Pa 2019) (holding that *Rooker-Feldman* arguments are properly addressed under

12(b)(1)). Therefore, we will address Defendants' *Rooker-Feldman* arguments as such. ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (*citing United States v. Cotton,* 535 U.S. 625, 630 (2002))).

Defendants' *res judicata* and deficient pleading arguments are both properly examined under Rule 12(b)(6).[10]

### A. Rule 12(b)(1)

On a Rule 12(b)(1) motion, a court must first determine if the motion is a "facial" or a "factual" attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack "considers a claim on its face" and argues that the claim "is insufficient to invoke the subject matter jurisdiction of the court." *Id.* at 358. With a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (*quoting In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). With a factual attack, by contrast, "a court may

---

[10]     "[R]es judicata is an affirmative defense and not a doctrine which [defeats] subject matter jurisdiction." *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). As such, the Third Circuit has stated that a motion to dismiss is more appropriately analyzed under 12(b)(6) than 12(b)(1) when a defendant argues that *res judicata* bars a district court from hearing a plaintiff's claims. *Id.* at 886.

weigh and 'consider evidence outside the pleadings.'" *Id.* (*quoting Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

Here, Defendants do not challenge jurisdiction based on the factual assertions contained in Plaintiff's Complaint. Rather, they contend that jurisdiction is lacking strictly as a matter of law based on the *Rooker Feldman* doctrine. Therefore, while Defendants do not expressly state which type of attack they are advancing, we construe their motion as a facial attack because they present a legal argument against jurisdiction as opposed to a factual one. *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("A factual attack requires a factual dispute, and there is none here."). Thus, we consider whether Plaintiffs' allegations, attached documents, and referenced proceedings establish the necessary jurisdiction in the light most favorable to Plaintiffs.

## 1. *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 165 (3d Cir. 2010). The doctrine applies only in "limited circumstances" and is "confined to cases… brought by state-court losers inviting district court review and rejection of the state court's judgments." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).

In  an attempt to limit the doctrine's reach, the Third Circuit has instituted the following four requirements to bar a federal claim under *Rooker-Feldman*: (1) [T]he federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (quoting *Exxon Mobil*, 544 U.S. at 284) (alterations in original).

The first and third requirements present a straightforward analysis. *Great W. Mining & Mineral Co.*, 615 F.3d at 166. Indeed, both requirements are met here for all counts because Plaintiffs lost the foreclosure action in state court when a default judgment was entered on February 11, 2016 and this action was initiated over three years later in federal court on April 5, 2019.[11]

As to the second factor, whether plaintiff "complain[s] of injuries caused by [the] state-court judgments," "[i]f the defendants, rather than the state court judgments, caused the injuries complained of, *Rooker-Feldman* does not apply and the district court is not barred from reviewing those injuries." *Mikhail v. Kahn*, 991 F.Supp.2d 596, 614 (E.D. Pa. 2014). In other words, "[t]he question is: was the source of the injury the defendant's conduct or the state court judgment?"

---

[11]      Judgment by Default, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Feb. 11, 2016); (Doc. 1).

When the injury is caused by the state court judgment, federal courts are barred from hearing the claim. *Minton v. Cach, LLC*, No. 14-4371, 2014 WL 4764183, at *3 (E.D. Pa. Sept. 25, 2014).

The second and fourth requirements are "closely related." *Id*. at 168. The fourth requirement asks, "whether the plaintiff's claims will require appellate review of state-court decisions by the district court." *Id*. at 169. "Prohibited appellate review consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with the law." *Id*.

Where a plaintiff attempts to litigate a matter that was previously litigated, "there is jurisdiction as long as the 'federal plaintiff present[s] some independent claim,' even if that claim denies a legal conclusion reached by the state court." *Id*. (quoting *Exxon Mobil*, 544 U.S. at 293). Put another way, "if the federal court's review does not concern 'the bona fides of the prior judgment,' the federal court 'is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.'" *In re Phila. Entmt. & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018) (quoting *Great W. Mining & Mineral Co.*, 615 F.3d at 166).

**B. Rule 12(b)(6)**

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint…and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### 1. *Res Judicata*

In determining the applicability of principles of *res judicata*, we must give the same preclusive effect to the judgment in the state foreclosure action as the courts in Pennsylvania, the state in which the judgment was entered, would give. *See Lance v. Dennis,* 546 U.S. 459, (2006) ("Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments."); *see also Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40

F.3d 1416, 1429 (3d Cir.1994) (citing *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466 (1982), and 28 U.S.C. § 1738).

To establish *res judicata* in Pennsylvania, a defendant must demonstrate that there have been two actions which share: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued. *Bearoff v. Bearoff Bros., Inc.,* 458 Pa. 494, 327 A.2d 72, 74 (1974) (citations omitted).[12]

Plaintiffs' federal claims are based on allegations relating to their mortgage, including events leading up to its execution, and events leading up to and including the foreclosure. The "thing sued upon" is therefore the same, as are the parties, whose capacities to sue and be sued are not in dispute. We therefore focus our review of this issue on whether the "cause of action" is the same in the state foreclosure action and the instant case.

---

[12] We note that there is some case law in Pennsylvania recognizing a "fraud exception" to *res judicata* in which a previous action will not have preclusive effect if there are allegations that the previous judgment was procured by fraud. S*ee Int'l Org. Masters, Mates and Pilots of Am., Local No. 2 v. Int'l Org. Masters, Mates and Pilots of Am., Inc.,* 456 Pa. 436, 318 A.2d 918, 921 (Pa.1974); *Gordon v. Hartford Sterling Co.,* 350 Pa. 277, 38 A.2d 229, 233 (Pa.1944). However, Plaintiffs' bald assertions that Defendants commenced a foreclosure action by "misrepresenting the character, legality, ownership, and possession of the 'mortgage transaction'" are not supported by any factual assertions that would allow us to conclude that the "fraud exception" should apply. In any case, the exception was not raised by the parties, and so we deem it to be waived.

### 2.     *Iqbal* and *Twombly* Standards

*Iqbal* and *Twombly* test the sufficiency of the complaint against the pleading requirement of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that

constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the … complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.   DISCUSSION

We grant Defendants' Motion to Dismiss in its entirety. We find that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine because they ask this Court to impermissibly review a state court decision and to provide relief from its judgment. Even if we were disinclined to find that *Rooker*-Feldman applies to this case, we also find that Plaintiffs' claims are precluded by res *judicata* because Pennsylvania preclusion law would not permit Plaintiffs to bring the instant case.

Finally, we also find that Plaintiffs, in each of their counts, fail to state a claim for which relief can be granted. We will appropriately discuss each argument in turn.

## A. *Rooker-Feldman* Doctrine

We find that all counts of Plaintiffs' Complaint are barred by the *Rooker-Feldman* doctrine to the extent they seek redress of injuries caused by the previous state foreclosure proceedings. To the extent they seek relief from allegedly unlawful practices by Defendants that occurred before the state foreclosure judgment, they are not barred by *Rooker*-Feldman, but they are nevertheless barred by *res judicata* and fail to state a cognizable claim.

Defendants argue *Rooker-Feldman* applies to the instant suit because Plaintiffs seek, through all eight of their claims, to impermissibly attack the default foreclosure judgment entered by the Pennsylvania state courts. Defendants cite several sections of Plaintiffs' Complaint which classify the state court judgment as "unlawful," (Doc. 1 at 5), and in which Plaintiffs assert that "Defendants are attempting to receive a benefit through the sale of the Plaintiffs's [*sic*] home." (Doc. 1 at 5). In addition, Defendants summarize Plaintiffs' claims as including allegations that "Plaintiffs were improperly served, the Note was forged, and that the legal instruments regarding the Property were forged," all of which they contend merely attack the state court foreclosure judgment. (Doc. 13 at 6).

On the other hand, Plaintiffs argue that their claims are not barred by *Rooker-Feldman* because the limited doctrine does not apply to suits that challenge party actions underlying state court decisions. Plaintiffs argue that they challenge the Defendants' underlying actions, not the state court judgment itself. (Doc. 14 at 3). Because their federal court claims would not nullify the state's foreclosure action, Plaintiffs argue, *Rooker-Feldman* should not apply. *Id*.

We disagree. Because at least a portion of all counts of Plaintiffs' Complaint amount to "state-court losers complaining of injuries caused by state-court judgments" for which they seek federal relief, we find that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine to the extent they seek redress of injuries caused by the state court foreclosure action. *Great W. Mining and Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163-64 (3d Cir. 2010).

The Third Circuit requires a specific *Rooker-Feldman* analysis for a FDCPA claim (Count I), which we will address first. Counts II, III, V, VI, and VII are so deficiently pled in Plaintiffs' Complaint that they may be addressed together. Counts IV and VIII violate *Rooker-Feldman* on their face because they directly seek to attack the state court judgment. We appropriately discuss our reasoning below.

### 1.  Count I—FDCPA Violation

We find that Plaintiffs' FDCPA claim is barred by the *Rooker-Feldman*
doctrine because Plaintiffs attempt to attack the validity of the debt underlying the
state court judgment. Judge Opel of our Bankruptcy Court has previously held that
when considering whether an FDCPA claim is barred by *Rooker-Feldman*, "the
answer lies in the alleged facts and conclusions which underpin the alleged
violations of the Act. Alleged violations which assert the invalidity of a debt,
which a state court has determined to be valid, are barred by the *Rooker–
Feldman* doctrine. Conversely, alleged violations which assert specific acts by a
debt collector, in violation of the FDCPA, are not barred by *Rooker–Feldman.*" *In
re Ogilvie*, 533 B.R. 460, 468 (Bankr. M.D. Pa. 2015).

Here, Plaintiffs explicitly plead that the note was "illegally created—
forged—and stolen," was induced by *fraud in the factum*, and that the foreclosure
was induced by "presenting falsely made—forged—and/or falsely acknowledged
instruments displaying misrepresentations of fact, imposters, and/or false
acknowledgements." (Doc. 1 at 9). In addition, Plaintiffs allege that the foreclosure
debt action was based on a misrepresentation of the "character, legality, ownership,
and possession of the 'mortgage transaction' in dispute." (Doc. 1 at 8). Indeed,
Plaintiffs' Complaint is titled Count I "FDCPA VIOILATION [*sic*]—

UNLAWFUL FORECLOSURE," providing perhaps the clearest idea of what injury Plaintiffs are attempting to redress with their Count I. (Doc. 1 at 5).

We find that these claims attack the legitimacy of the state court action by alleging the invalidity of the Note and the Mortgage. Plaintiffs do not allege any specific collection method that would violate the FDCPA or any actions on Defendants' part separate from the validity of the Mortgage. Indeed, we find it significant that Plaintiffs could have sought redress of all alleged violations of the FDCPA in the state foreclosure action but did not do so. *Id.* Plaintiffs' attempt to bring these claims presently in federal court lends credence to Defendants' argument that "this action is nothing more than an attempt to evade the underlying state court foreclosure judgment." (Doc. 13 at 7).

We therefore find that these FDCPA claims are contentions "in essence that the state foreclosure was improperly granted." *In re Ogilvie*, 533 B.R. at 468 (*citing Blum v. Glen Garron, LLC,* 51 F.Supp.3d 1286, 1288–89 (S.D. Fla. 2014). As has previously been held in this Court, "consideration of these allegations would undercut and implicitly reject the judgment entered in the state foreclosure action" and are barred by *Rooker-Feldman* for failure to allege specific actions by

the debt collector that would constitute violations, as such statutory claims require.

*Id.* at 469.[13]

## 2. Counts II, III, V, VI, and VII —Deficient Pleading

Plaintiffs' Counts II,[14] III,[15] V,[16] VI, [17]  and VII[18] are so deficiently pled that

we cannot determine whether the alleged injuries stem from the underlying state

---

[13]     The Court notes that the FDCPA analysis *In re Ogilvie* bears some similarity to the instant case: "The heart of the Debtor's FDCPA claim is as follows. The original note had to be produced in the state foreclosure action and it allegedly was not produced. This somehow makes the mortgage foreclosure judgment invalid and shows that the Defendants violated the FDCPA. I conclude that this represents an attack on the final judgment which was entered in the state foreclosure action. Rather than attacking the collection methods used by the Defendants, the Debtor continues to attack the underlying debt." 533 B.R. at 469.

[14]     Plaintiffs' Count II is so deficiently pled that we are unable to determine when the contract breaches were alleged to have occurred, what those breaches were allegedly comprised of, which defendants are alleged to have committed them, or the damages Plaintiffs' allege they suffered as a result. Plaintiffs' Complaint states only that "Defendants did breach the contractual terms of the loan/note by engaging in deceptive and fraudulent practices." (Doc. 1 at 10).

[15]     We are unable to determine which employees are alleged to have been negligent such that we should hold their employers responsible in Plaintiffs' Count III *respondeat superior* claim. Plaintiffs baldly allege only that "all factors have been met" and that there is a "strong case for Respondeat Superior" (Doc. 1 at 11).

[16]     Plaintiffs' RICO allegations in Count V consist of a scant few paragraphs stating, in their entirety, that "the aforementioned facts support this claim in this action" and "the continued pursuit by Defendants clearly illustrates that the actions are still ongoing, to this day," without any description of the "aforementioned facts" or "the actions" that would make out a cognizable claim. (Doc. 1 at 14).

[17]     Plaintiffs' allegations in Count VI state only that Plaintiffs were consumers of Defendants' "goods and services" and that "the actions of Defendants…were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiffs," failing to allege any specific facts to support a violation of the UTPCPL. (Doc. 1 at 15).

[18]     From the single conclusory statement contained in Plaintiffs' RESPA claim, it seems they argue in their Count VII that they have made out a claim solely because "based on the aforementioned facts Plaintiffs has [*sic*] presented more than enough evidence." (Doc. 1 at 17). We cannot determine at this juncture whether the "aforementioned facts" and "evidence" relate to the underlying state foreclosure action or to some alleged action on the part of Defendants that occurred before the foreclosure.

action or from alleged unlawful practices that occurred before the foreclosure. Therefore, to the extent these claims arise from perceived illegalities relating to the foreclosure action or the invalidity of the Mortgage, we find these claims to be barred by *Rooker-Feldman*. *Great W. Mining & Mineral Co.*, 615 F.3d at 177. To the extent these claims stem from perceived unlawful practices originating before the foreclosure, they are not barred by *Rooker-Feldman,* but we shall dismiss these claims as barred by *res judicata* and for failure to state a claim for which relief can be granted, discussed below.

### 3. Counts IV and VIII—Direct Attacks on State Court Judgment

We find that Plaintiffs' Counts IV and VIII are both barred by the *Rooker-Feldman* doctrine because the alleged injuries stem directly from the state court foreclosure action.

In their Count IV, Plaintiffs allege that Defendants were unjustly enriched at the expense of the Plaintiffs "either through intentional actions or gross negligence" and that Defendants "are attempting to receive a benefit through the sale of Plaintiffs's [*sic*] home." (Doc. 1 at 12). This claim specifically stems from the sheriff's sale of Plaintiffs' home, which resulted from the state court foreclosure action.

In addition, Plaintiffs allege that Defendants violated §1024.41 in their Count VIII because they failed "to inform the Plaintiffs and the Court that the

Defendants had divested themselves of the Note and Mortgage and therefore had no authority or standing to proceed with a foreclosure Sheriff Sale, all in an attempt to unlawfully take and convert the Plaintiffs' property" and that "Plaintiffs has [*sic*] incurred significant damages" as a result. (Doc. 1 at 18). These arguments also constitute a direct attack on the state judgment and invite this Court to review the standing of the Defendants in the state action, which *Rooker-Feldman* precludes. Indeed, Plaintiffs explicitly state that the damages they allege stemmed directly from the state court judgment. (Doc. 1 at 18).

Therefore, to grant Plaintiffs the relief they seek on both these counts would require this Court to review and reject the state court's judgments. *See Easley v. New Century Mortg. Corp.*, 394 F. App'x 946, 948 (3d Cir. 2010) ("Here, at least in part, [the plaintiff] seeks damages stemming directly from the state court's judgment in the foreclosure action. For example, she seeks compensation for…the damage to her credit rating caused by the foreclosure. That part of her [Consumer Protection Law] claim was properly dismissed for lack of subject matter jurisdiction under *Rooker-Feldman*."); *Bivens v. Pennsylvania*, No. 1:17-CV-00809, 2019 WL 1141082, at *3 (M.D. Pa. Feb. 21, 2019) ("Where a plaintiff's asserted damages arise directly from the state court decision at issue, the plaintiff's damages claim is barred by the *Rooker-Feldman doctrine*").

We consequently find that Plaintiffs' unjust enrichment claim and their §1024.41 claim stem directly from the state court's foreclosure judgment and are therefore barred from consideration in this Court by *Rooker-Feldman.*

## B. Rule 12(b)(6)

Defendants also argue, in the alternative, that Plaintiffs' claims are barred in their entirety by *res judicata* because all eight claims relate to the state foreclosure action and could have been raised in the state court. In addition, Defendants argue that all eight of Plaintiffs' causes of action fail to state a claim for which relief can be granted and so may be dismissed under 12(b)(6) for failure to conform with *Twombly and Iqbal.*

Plaintiffs contend that their claims "do not allege injuries arising from the state-court orders, and does [*sic*] not seek to overturn them, rather each claim was from actions taken by Defendants outside of or subsequent to the foreclosure action, and makes clear the most recent foreclosure action itself was based on false and deceitful actions taken by Defendants." (Doc. 14 at 4).

For the reasons stated below, we agree with Defendants with respect to both arguments. We conclude Plaintiff's remaining claims that are not barred by the *Rooker–Feldman* doctrine are nonetheless barred by *res judicata*. In the alternative, Plaintiffs have failed to state a claim for which relief can be granted under the *Twombly and Iqbal* standards.

21

### 1. *Res Judicata*

"Because *Rooker-Feldman* only concerns a federal district court's jurisdiction, analysis of whether a plaintiff's claims are barred by *res judicata* is also necessary." *Aggie v. Pa. Dep't of Human Servs.*, No. 15-5456, 2015 WL 8007570, at *10 (E.D. Pa. Dec. 7, 2015) (Goldberg, J.); cf. *Great W. Mining & Mineral Co.*, 615 F.3d at 170 (quoting *Exxon Mobil*, 544 U.S. at 293, 125 S.Ct. 1517) ("As a final step, should the *Rooker-Feldman* doctrine not apply such that the district court has jurisdiction, 'disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.'"). Because some of Plaintiffs' claims are so deficiently pled that we are unable to determine if *Rooker-Feldman* serves as a complete bar to Plaintiffs' Complaint, we must also consider whether *res judicata* precludes Plaintiffs' claims.

Defendants argue that, even if *Rooker-Feldman* is not applicable, Plaintiffs are barred by *res judicata* from bringing their claims because Plaintiffs' claims were raised, or could have been raised, between Plaintiffs and Defendants in state court. Plaintiffs argue that "although some of the facts of the foreclosure case were submitted for reference, the claims to not allege injuries arising from the state-court orders, and does not seek to overturn them" and that "since the issues could not have been and were not already litigated, there is no defense of collateral estopped [*sic*] or *res judicata*." (Doc. 14 at 4-5).  To the extent that Plaintiffs'

claims are not already barred by *Rooker-Feldman,* we find that they are precluded by *res judicata*.

As previously stated, the only contentious issue here is the cause of action. In Pennsylvania, *res judicata* bars "claims that were or *could have been raised,*" *Turner v. Crawford Square Apts. III, L.P.,* 449 F.3d 542, 543 (3d Cir. 2006) (*quoting Balent v. City of Wilkes–Barre,* 542 Pa. 555, 669 A.2d 309, 315 (1995)(emphasis in original)). The Pennsylvania Supreme Court has illuminated the public policy behind *res judicata* as seeking "to prevent an individual from being vexed twice for the same cause." *Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786, 788 (1965). In light of this policy, "[t]he rule should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties." *Id.*

Here, the claims and arguments asserted in Plaintiffs' federal Complaint are nearly identical to those that were raised before the state court in an attempt to open the default judgment entered against them.[19] In both their Complaint before this Court and their petition to open their state court default judgment, Plaintiffs

---

[19]     Memorandum of Law in Support of Defendants' Motion to Open Default Judgment, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Aug. 3, 2017).

complain of lack of standing,[20] misrepresentation,[21] lack of notice,[22] improper

fees,[23] and lack of possession of the Note.[24] While Plaintiffs now couch these

arguments in differently named causes of action, we recognize this tactic as a

"minor difference[] of form…contrived only to obscure the real purpose—a second

trial on the same cause between the same parties." *Stevenson*, 417 Pa. at 208.

The state court has heard the arguments before us now and has decided that

they are not meritorious to open the default judgment in Plaintiffs' mortgage

foreclosure action. We therefore find this decision to rest on the same cause of

action as the case presently before us and so, to the extent Plaintiffs' claims are not

already barred by *Rooker-Feldman*, we find that *res judicata* precludes Plaintiffs'

claims before this Court.[25]

---

[20]     Doc. 1 at 18; Memorandum of Law in Support of Defendants' Motion to Open Default Judgment, at 9, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Aug. 3, 2017).

[21]     Doc. 1 at 8; Memorandum of Law in Support of Defendants' Motion to Open Default Judgment, at 7-8, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Aug. 3, 2017).

[22]     Doc. 1 at 4; Memorandum of Law in Support of Defendants' Motion to Open Default Judgment, at 11, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Aug. 3, 2017).

[23]     Doc. 1 at 4; Memorandum of Law in Support of Defendants' Motion to Open Default Judgment, at 8, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Aug. 3, 2017).

[24]     Doc.1 at 3; Memorandum of Law in Support of Defendants' Motion to Open Default Judgment, at 9, *Bank of America v. Mary G. Donohue and Michael D. Myers*, 2015-SU-390-60 (York Cnty. Ct. Com. Pl. Aug. 3, 2017).

[25]     *See R/S Fin. Corp. v. Kovalchick*, 552 Pa. 584, 589 (1998) (holding that a petition to open a default judgment has preclusive effect).

## 2. *Iqbal* and *Twombly* standards

Even were we disinclined to find the instant case barred by *Rooker-Feldman* and *res judicata*, we nonetheless find that Plaintiffs' Complaint is so deficiently pled that it fails to state a claim for which relief may be granted. Plaintiffs' Complaint lacks any factual specificity from which we might measure their claims and thus we cannot find that Plaintiffs are plausibly entitled to any relief. [26]

Indeed, Plaintiffs' Complaint alleges misrepresentation without any specificity as to which Defendants committed the alleged fraud, what misrepresentations were allegedly made, or how they impacted Plaintiffs. (Doc. 1

---

[26]     We acknowledge that such woefully insufficient pleading and other abusive tactics are not unusual for Plaintiffs' counsel Joshua Thomas, as was brought to our attention by Defendants in the Joint Case Management Plan (Doc. 21 at 3). Our sister court has noted the following:

> "Most troubling, the Court notes that Plaintiff's Counsel [Attorney Thomas] has a well-documented history of filing virtually identical claims in the foreclosure context barred by either the *Rooker-Feldman* doctrine or the New Jersey entire controversy doctrine or both in the District of New Jersey and the Eastern District of Pennsylvania…The Courts of the Third Circuit have cautioned [Attorney Thomas] regarding his repeated disregard for court orders and Rules [fn.: See, e.g., *Akinsamni v. Nationstar Mortg.*, No. 16-7732, 2019 WL 14524404, at *2, n.2 (D.N.J. Jan. 12, 2018) (dismissing motions improperly filed by Mr. Thomas and warning him that "further disregard for the rules may result in an Order to Show Cause as to why discipline should not be imposed").] and this Court will now enter an Order for Plaintiffs' counsel [Joshua Thomas] to Show Cause why he should not be enjoined from further filings in this Court."

*Hood, et. al. v. Victoria Crossing Townhouse Association, et. al*, D.N.J. No. 18-cv-12259. That Order is scheduled for determination on September 16, 2019. It seems that Plaintiffs' Counsel is now repeating this behavior in the Middle District of Pennsylvania, and we caution him, as did our sister Court, that continued use of such poorly prepared filings and disregard for lack of subject matter jurisdiction and other court Rules may result in an Order to Show Cause as to why discipline should not be imposed and as to why he should not be enjoined from further filings in this Court as well. We are deeply troubled that Plaintiffs' counsel would so recklessly and cavalierly accuse various Defendants of fraud and misrepresentation in such a conclusory and unsubstantiated manner.

at 8-9). Plaintiffs allege breach of contract without specifying which terms of the contract were allegedly breached, which Defendants they allege committed the breach, or how they were damaged by those alleged breaches. (Doc. 1 at 10). Plaintiffs include a RICO claim, asserting only that "the aforementioned facts support this claim in this action" as the sole factual basis for the claim (Doc. 1 at 14). These instances do not constitute the entirety of Plaintiffs' deficient pleading, but we do not find it necessary to address every defective aspect of Plaintiffs' Complaint at this time. We find it sufficient to note that none of Plaintiffs' claims survive a 12(b)(6) motion and that they are, in any case, barred by *Rooker-Feldman* and *res judicata.*

We also note that allowing Plaintiffs to amend their complaint would be futile and so we decline to do so.[27] Even if Plaintiffs could amend their complaint to include appropriate factual allegations that would support their claims, they would nevertheless still be barred by *Rooker-Feldman* and *res judicata.* We therefore decline to give Plaintiffs leave to amend their Complaint.

---

[27]     The Court may deny leave to amend if the amendment would be futile. *Budhun v. Reading Hosp. and Medical Center,* 765 F.3d 245, 259 (3d Cir. 2014). "Futility" means that a proposed amendment to a pleading fails to state a claim upon which relief could be granted. *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1434 (3rd Cir. 1997). In determining whether an amendment is futile, the Court employs the same standard that is applied under a Rule 12(b)(6) dismissal for failure to state a claim. *Budhun,* 765 F.3d at 259.

## V.     CONCLUSION

For the reasons stated above, we will grant Defendant's Motion to Dismiss with respect to all counts.